UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES FULLER and ANTONIO DAVIS, | ) ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:20-CV-2146-G |
| | ) | |
| CHRISTY BIGGS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant PACCAR Leasing Company ("PACCAR")'s motion to dismiss or, in the alternative, motion for summary judgment ("the motion to dismiss") (docket entry 25). The court declines to convert the motion to dismiss into a motion for summary judgment. For the reasons set forth below, the motion to dismiss is **DENIED**.

## I. BACKGROUND

### A. Factual Background

This suit arises out of a motor vehicle collision involving the plaintiffs and Scott Biggs ("Biggs").[1] On September 5, 2019, the plaintiffs were traveling

---

[1]     Scott Biggs passed away on November 19, 2020. The court was informed of Biggs' death on December 17, 2020 (docket entry 24). The court granted the plaintiffs' motion to substitute Christy Biggs, Scott Biggs' widow, in his

northbound on North Central Expressway along with Biggs, who was operating an 18-wheeler.  Plaintiffs' Original Petition and Discovery Requests to Defendants ("Original Petition") (docket entry 1-10) at 3.[2]  The plaintiffs assert that "Biggs failed to slow and/or stop and lost control of his vehicle, colliding hard with the back and side of" Fuller's vehicle, which then "hit the side of the expressway."  *Id.*  Biggs then allegedly "continued northbound and collided with the side of" Davis' vehicle.  *Id.*  The plaintiffs allege that they "were injured and continue to suffer injuries and damages from this incident."  *Id.*

PACCAR owned the "tractor" that was operated by Biggs at the time of the alleged accident.[3]  Motion to Dismiss ¶ 13.  However, PACCAR maintains that it had no relationship with Biggs and did not lease the tractor to him.  Rather, PACCAR asserts, it leased the tractor to DKL Transportation, LLC ("DKL") which, in turn, leased the tractor to Biggs.  *Id.*  It appears that DKL owned the trailer that Biggs was pulling at the time of the accident.  Brief in Support of Plaintiffs' Response to Defendant PACCAR Leasing Company, a Division of PACCAR Financial Corp.'s Motion to Dismiss or Motion for Summary Judgment ("Response") (docket entry

---

place (docket entry 49).

[2]    When citing to the parties' briefing, the court refers to pagination listed on the bottom of the PDF, not as generated by ECF.

[3]    The "tractor" is apparently that part of an 18-wheeler which houses the engine and driver and which pulls the trailer.

37) at 15.

## B. Procedural History

The plaintiffs filed suit in state court on June 30, 2020 against Biggs, PACCAR, DKL, and Delek US Holdings, Inc.  Motion to Dismiss at 2.  The plaintiffs asserted two claims against PACCAR in their Original Petition.  First, the plaintiffs claim that PACCAR negligently entrusted the tractor to Biggs because Biggs "was unlicensed, incompetent, and/or reckless."  Original Petition at 4-5.  Second, the plaintiffs claim that PACCAR "failed to properly train and/or supervise" Biggs or was "negligent in hiring and/or retaining" Biggs.[4]  *Id.* at 5-6.  PACCAR filed a notice of removal (docket entry 1) on August 13, 2020 and the instant motion to dismiss on January 26, 2021.  The plaintiffs filed their response on February 18, 2021. PACCAR replied on March 4, 2021.  PACCAR's motion to dismiss is therefore ripe for determination.

## II. APPLICATION

## A. Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina*

---

[4]    In their response, the plaintiffs also argue that PACCAR is a statutory employer of Biggs under the Federal Motor Carrier Safety Act ("FMSCA"), 49 U.S.C. §§ 30101 etc.  Response at 13-15.  It is unclear, however, whether the plaintiffs assert their FMSCA argument as an independent theory of liability or in satisfaction of an element of their negligent entrustment or negligent hiring claims.

*Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. V. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether the plausibly give rise to an entitlement of relief."

- 4 -

*Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged –but it has 'show[n] – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against the defendants "across the line from conceivable to plausible." See *id.* at 679, 683.

## B. Application

As stated above, the plaintiffs claim that PACCAR (1) negligently entrusted the tractor to Biggs and (2) negligently hired or trained Biggs. Original Petition at 4-6. In their response to PACCAR's motion to dismiss, the plaintiffs also argue PACCAR's liability as a statutory employer of Biggs under the FMSCA. Response at 13-15. In its motion to dismiss, PACCAR argues that the plaintiffs' state-law negligence claims fail because those claims are preempted by the Graves Amendment, 49 U.S.C. § 30106(a). Motion to Dismiss ¶¶ 11-12. PACCAR also argues that,

insofar as the plaintiffs assert an independent theory of liability under the FMSCA in their response, such a claim is not properly before the court.  Reply at 7.

The court agrees with the plaintiffs that their state-law negligence claims are not preempted by the Graves Amendment.  However, to the extent that the plaintiff's assert an independent theory of liability under the FMSCA, such a claim is not properly before the court.

1.  *The Graves Amendment*

a.  Statutory Construction

The Graves Amendment provides, in relevant part, that: "(a) An owner of a motor vehicle that rents or leases the vehicle to a person . . . shall not be liable under the law of any State . . ., by reason of being the owner of the vehicle . . ., for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if – (1) the owner . . . is engaged in the trade or business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner . . . ."  49 U.S.C. § 30106(a).  The leading circuit court decision substantively interpreting the Graves Amendment is *Carton v. General Motor Acceptance Corporation*, 611 F.3d 451 (8th Cir. 2010).  In that case, the plaintiffs, riding motorcycles, collided with a vehicle operated by the defendant-driver, who in turn leased the vehicle from General Motors Acceptance Corporation ("GMAC"), a second defendant.  *Id.* at 453.  The

- 6 -

plaintiffs in that case sued GMAC as vicariously liable for the collision and for, among other things, negligently (1) entrusting the vehicle to the defendant-driver, (2) failing to repossess the vehicle, and (3) "failing to discover that [the defendant-driver] was impaired and uninsured." *Id.* at 452-53.

After the Eighth Circuit assessed whether a discrete Iowa statute barred the plaintiffs' claims, which it so found, the *Carton* court also considered, in the alternative, whether the Graves Amendment independently prohibited the plaintiffs' claims. *Id.* at 456. The Eighth Circuit began its analysis by noting that "the Graves Amendment prohibits vicarious liability claims against owners of leased vehicles" and, on that basis, held that all vicarious liability claims were preempted by the federal statute. *Id.* at 457.[5] The *Carton* court next turned to the plaintiffs' direct negligence claims and found that "the Graves Amendment contains a savings clause [referring to subsection (2)] which allows an owner of a leased vehicle to be found directly liable for the owner's negligence or criminal wrongdoing." *Id.* The court gave the term "negligence" as used in subsection (2) a "broad" interpretation, asking only "whether Iowa courts would recognize a cause of action" for the direct negligence claim brought by the plaintiffs. *Id.* at 458. Although the court did not make an *Erie*-guess

_____

[5]     The *Carton* court seems to have concluded that the Graves Amendment preempts vicarious liability so long as (1) a lease agreement between the owner and driver is still in effect, (2) the leased vehicle was involved in the collision, and (3) the owner is "engaged in the trade or business of renting or leasing motor vehicles" within the meaning of subsection (1). See *id.* at 457.

as to whether Iowa courts would recognize the negligence claims brought by the plaintiffs in that case, the Eighth Circuit nevertheless held that the plaintiff failed to plead facts sufficient to state a claim under any theory of negligence asserted.

The court cannot accept the Eighth Circuit's interpretation of the Graves Amendment as barring vicarious liability claims even if subsection (2) is not satisfied. Rather than prohibiting vicarious liability claims so long as subsection (1) is satisfied, the Graves Amendment only preempts such indirect theories of liability if both subsection (1) and (2) are demonstrated. The court is led to this conclusion for two reasons.

First, the plain meaning of section (a) demonstrates that the preemption of vicarious liability is conditioned on satisfying both subsections (1) and (2), rather than subsection (1) alone.[6] The Eighth Circuit is correct that the Graves Amendment prohibits liability "by reason of being the owner of the vehicle," § 30106(a), but an analysis that begins and ends with this maxim requires an unduly isolated reading of section (a), divorced from the remainder of the statute's provisions. Indeed, section (a), by its own terms, applies *only* "*if* (1) the owner . . . is engaged in the trade or

_____

[6]     The court recognizes that, strictly speaking, the Eighth Circuit extended preemption only when, in addition to a defendant's demonstrating subsection (1), there was an operative lease between the lessor and lessee and the leased vehicle was involved in the collision. The court agrees with *Carton* that a defendant must also demonstrate these threshold issues. For sake of clarity, however, the court highlights only the importance of demonstrating subsections (1) and (2) before preemption is extended under the Graves Amendment.

business of renting or leasing motor vehicles; and (2) there is no negligence or criminal wrongdoing on the part of the owner . . . ."  *Id.* at (a)(1)-(2) (emphasis added).  The statute's use of the conditional "if" in section (a), combined with the conjunctive "and" between subsection (1) and (2), confirms that preemption applies only in the event that subsections (1) and (2) are satisfied.[7]  Foundational canons of statutory construction necessitate this result.  "[O]ne of the most basic interpretive canons [is] that '[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"[8]

---

[7]  Other lower courts have articulated the belief that subsection (2) does not present a necessary condition for preemption.  In *Johnke v. Espinal-Quiroz*, 2016 WL 454333, No. 14-CV-6992 (N.D. Ill. Feb. 5, 2016), for example, the court, taking *Carton* as its lodestar, concluded that the preemption spelled out in section (a) was conditioned only on satisfying subsection (1) (in addition, of course, to the threshold showings that a lease covered the vehicle and that the leased vehicle was involved in the accident).  *Id.* at *4 ("[A]ssuming that there is *no dispute* over whether a defendant was engaged in the business of leasing motor vehicles [that is, subsection (1)] . . ., a court can assess Graves Amendment preemption at the motion to dismiss stage, dismissing any claims not based on the lessor defendant's own negligence or criminal wrongdoing that are brought 'by reason of [the defendant] being the owner of the vehicle.'") (emphasis added).  However, the *Johnke* court apparently refused to extend conditionality to "disputes" whether the owner of the vehicle engaged in "negligence" under subsection (2).  For the reasons set forth herein, the court can discern no sound reason why the applicability of section (a) ought to depend on the satisfaction of subsection (1) but not on subsection (2).

[8]  The Eighth Circuit would likely retort that its reading of subsection (2) as a "savings clause," allowing for claims of direct liability, avoids the charge of rendering the subsection inoperative.  This response is not persuasive for two reasons.  First, the particular provision rendered inoperative is not necessarily subsection (2) of the statute, but the conditional "if" located in section (a) and the conjunctive "and" between subsections (1) and (2).  Second, as demonstrated below, interpreting subsection (2) in this light carries its own interpretive difficulties.

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 294 (5th Cir. 2020) (en banc)

(quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  In the area of federal

preemption in particular, courts must "fairly but – in light of the strong presumption

against preemption – narrowly construe the precise language of [the preemption

provision] and . . . look to each of [the] . . . claims [raised] to determine whether

[they are] in fact preempted."  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523

(1992).  "Indeed, when Congress intends to pre-empt [certain] claims categorically, it

does so using categorical (*e.g.*, 'all') and/or declarative language (*e.g.*, 'shall'), rather

than a conditional term ('if')."  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 253 (2011)

(Sotomayor, J., dissenting).  Under standard canons of statutory construction,

therefore, the plain language of the Graves Amendment mandates only conditional

preemption of vicarious liability claims, subject to subsections (1) and (2).[9]  An

interpretation contrary to this result effectively omits the conditional "if" found at

---

[9]     Aside from the obvious implications for theories of vicarious liability in motor vehicle suits, the conditional nature of preemption under the Graves Amendment also carries important consequences for the course of litigation.  In *Johnke*, for example, the court concluded that, "assuming that there is no dispute over whether a defendant was engaged in the business of leasing motor vehicles and that it owned the motor vehicle involved in the accident, a court can assess Graves Amendment preemption at the motion to dismiss stage, dismissing any claims not based on the lessor defendant's own negligence or criminal wrongdoing that are brought 'by reason of [the defendant] being the owner of the vehicle.'" 2016 WL 454333 at *4.  This court agrees with *Johnke*'s conclusion that, under the Graves Amendment, vicarious liability claims can be assessed at the motion to dismiss stage, with the caveat that a relevant "dispute" which prevents application of Graves Amendment preemption extends to both subsections (1) and (2).

- 10 -

the end of section (a) and the conjunctive "and" between subsections (1) and (2).[10]

The second reason supporting the court's interpretation of the Graves Amendment is the strained reading that the *Carton* court places on subsection (2). The courts which adhere to the reading of the Graves Amendment as barring vicarious liability without reference to subsection (2) read subsection (2) as a "savings clause" which exempts claims of "direct negligence" from preemption.  See *Johnke*, 2016 WL 454333 at *3-*4.  As the Eighth Circuit stated: "[a]lthough the Graves Amendment prohibits vicarious liability claims against owners of leased vehicles, the Graves Amendment contains a savings clause [referring to subsection (2)] which allows an owner of a leased vehicle to be found directly liable for the owner's negligence or criminal wrongdoing."  *Carton*, 611 F.3d at 457.  Subsection (2) of the Graves Amendment, however, cannot bear this reading.  Specifically, subsection (2) says nothing about the relevance of direct versus indirect negligence,

---

[10]     This interpretation is also compatible with Fifth Circuit case law.  To be sure, the Fifth Circuit has not directly addressed relationship between section (a) and subsections (1) and (2) of the Graves Amendment.  However, an interpretation of the Graves Amendment as allowing only conditional preemption of vicarious liability does not contradict what little Fifth Circuit guidance exists on the statute.  See *Cates v. Hertz Corporation*, 347 Fed. App'x. 2, 6 (5th Cir. 2009) (per curiam) ("The Graves Amendment preempted state law in the area of vicarious liability for owners engaged in the business of renting or leasing motor vehicles, *absent a showing of negligence or criminal wrongdoing on the part of the owner*.") (emphasis added).  Thus, it appears that the Fifth Circuit impliedly adopted the view that section (a) is predicated on demonstrating subsections (1) and (2).  If such a showing is not made, *Cates* can fairly be read to allow for the imposition of vicarious liability.

much less about barring the latter but allowing the former.[11]  Instead, that distinction

is made relevant only under section (a) which preempts liability "by reason of being

the owner of the vehicle."[12]  "It is a fundamental principle of statutory interpretation

that 'absent provision[s] cannot be supplied by the courts."  *Little Sisters of the Poor*

*Saints Peter and Paul Home v. Pennsylvania*, __U.S.__, 140 S.Ct. 2367, 2381 (2020)

(quoting *Rotkiske v. Klemm*, 589 U.S.__, 140 S.Ct. 355, 361 (2019)).  Not only does

this reading impute to subsection (2) a meaning which it cannot bear, it also renders

superfluous the scope of preemption as described in subsection (a); that is,

preempting liability "by reason of being the owner of the vehicle."  It is a "cardinal

rule of statutory interpretation that no provision should be construed to be entirely

redundant" or meaningless.  *Kungys v. United States*, 485 U.S. 759, 778 (1988).  The

original error appears to stem from the view that subsection (2) should be treated as

an *exemption* to preemption outlined in section (a) rather than as its necessary

condition.  For the reasons set forth above, however, the Graves Amendment cannot

be read in this light.  At bottom, therefore, the Graves Amendment prohibits

---

[11]    Indeed, subsection (2) is not structured like a typical savings clause, as
it does not contain the language of exception.  *See, e.g.*, 29 U.S.C. § 1144(b)(2)(A)
(providing, in the context of ERISA suits, that "[e]xcept as provided in subparagraph
(B), nothing in this subchapter shall be construed to exempt or relieve any person
from any law of any State which regulates insurance, banking, or securities").

[12]    Of course, the court agrees with the Eighth Circuit that the Graves
Amendment only preempts claims of vicarious liability and does not encompass
theories of direct liability.

vicarious liability, but only upon a demonstration that the defendant satisfies both subsections (1) and (2).

### b. Application of the Graves Amendment

PACCAR argues in its Motion to Dismiss that the Graves Amendment "bars all relief against" it.  Motion to Dismiss ¶ 12.  PACCAR argues that the conditions for applying the Graves Amendment are satisfied.  Namely, PACCAR asserts that it owned the tractor in question, the tractor was covered by a lease agreement, and that PACCAR is engaged "in the business or trade of renting or leasing commercial trucks."  *Id.*  PACCAR also appears to argue that the plaintiffs' claims are predicated on a theory of vicarious liability by virtue of the alleged employment relationship between PACCAR and Biggs: "[t]he basis for the alleged liability of PACCAR Leasing is the erroneous allegation that PACCAR Leasing was an employer of Defendant Biggs and was negligent in hiring . . . Defendant Biggs and that Defendants failed to properly train and/or supervise Defendant Biggs to prevent" the collision.  *Id.*  In short, PACCAR argues, the plaintiffs' "negligence claims . . . fail because PACCAR Leasing was not Defendant Biggs' employer."  *Id.* ¶ 13.

The parties spend much time arguing the existence of an employment relationship between PACCAR and Biggs.  Indeed, the parties devote the vast majority of their briefs to the question of employment, including issues of statutory employment and the validity of the lease between PACCAR and DKL.  But although

- 13 -

an employment relationship is a necessary condition of vicarious liability (at least in the context of respondeat superior), not all negligence claims brought against a defendant in his or her capacity as an employer amount to, or are predicated on, a theory of vicarious liability.  Thus, the parties largely fail to identify and brief the crucial antecedent question of the nature of the claims brought by the plaintiffs, including whether the claims target conduct by PACCAR – and are therefore claims of "direct" negligence – or are predicated solely on PACCAR's relationship to Biggs – and therefore claims of vicarious liability, subject to preemption under the Graves Amendment.  See *Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 833 (Tex. App. – Dallas 2011, no pet.) ("Vicarious liability is liability placed upon one party for the conduct of another, based *solely* upon the relationship between the two.") (emphasis added) (citations omitted).  This inquiry is dispositive.  As analyzed at length above, section (a) of the Graves Amendment extends preemption only to claims of vicarious liability, not to claims of direct negligence.[13]  Theories of direct liability do not fall within its ambit.

The Graves Amendment does not preempt the plaintiffs' claims for two reasons.  First, neither of the plaintiffs' negligence claims are predicated on a theory

---

[13]    Despite the differences between this court and the Eighth Circuit in interpreting the Graves Amendment, both readings of the statute conclude that only claims of indirect or vicarious liability are preempted.  See *Carton*, 611 F.3d at 457 ("[T]he Graves Amendment prohibits vicarious liability claims against owners of leased vehicles. . . .").

of indirect, vicarious liability.  Instead, both the negligent entrustment and negligent

hiring claims are "direct" theories of liability.  Second, even if one or the other

negligence claim is indeed a form of vicarious liability, such a claim is not preempted

by the Graves Amendment because subsection (2) of the statute is not satisfied.

It is settled law that negligent hiring is a "direct" theory of liability.  Texas

state courts have routinely held that negligent hiring is not a form of, or predicated

on, a theory of vicarious liability.   See, e.g., *Wrenn v. G.A.T.X. Logistics, Inc.*, 73

S.W.3d 489, 496 (Tex. App. – Ft. Worth 2002, no pet.) ("A claim of negligent hiring,

supervision, or retention is not dependent upon a finding that the employee was

acting in the course and scope of his employment when the tortious act occurred. The

cause of action is based on an employer's direct negligence instead of the employer's

vicarious liability for the torts of its employees.") (citations omitted); *Soon Phat, L.P.*

*v. Alvarado*, 396 S.W.3d 78, 100-01 (Tex. App. – Houston (14th Dist.) 2013, pet.

denied).  As have courts in this district.  See *Campos v. Lone Star Wheel Components,*

*Inc.*, 2015 WL 11120533 at *2-*3 (N.D. Tex. May 29, 2015) (Godbey, J.).  This is

because liability for negligent hiring is predicated on independent conduct of the

employer, rather than solely by virtue of being an employer.  *Bedford v. Moore*, 166

S.W.3d 454, 462 (Tex. App. – Ft. Worth 2005, no pet.) ("Under both theories [of

negligent hiring and negligent entrustment], neither are pure vicarious liability

situations because liability stems from distinct wrongful conduct.  In order to impose

liability under both situations, the fact finder must conclude that a preceding independent action occurred that caused the plaintiff harm . . . .").  State and federal courts treat claims of negligent entrustment in largely the same manner.  See *Green v. Texas Electrical Wholesalers, Inc.*, 651 S.W.2d 4, 6-7 (Tex. App. – Houston (1st Dist.) 1982, writ dism'd by agrt.); *O'Donnell v. Diaz*, 2019 WL 1115715, No. 3:17-CV-1911 (N.D. Tex. Mar. 11, 2019) at *2 (Scholer, J.) (assuming without deciding that "the Graves Amendment does not preempt a negligent entrustment claim asserted directly against the lessor").  However, there appears to be some disagreement among Texas courts as to whether negligent entrustment is a form of vicarious liability.  See *Atlantic Industrial Inc. v. Blair*, 457 S.W.3d 511, 517 (Tex. App. – El Paso 2014), *reversed on other grounds*, 482 S.W.3d 57 (Tex. 2016).

Even if negligent entrustment is viewed as a form of vicarious liability, however, preemption under the Graves Amendment is still inapplicable.  As considered above, the Graves Amendment only preempts vicarious liability claims if both subsections (1) and (2) are satisfied.  Here, even if it is assumed that PACCAR "is engaged in the trade or business of renting or leasing motor vehicles" within the meaning of subsection (1), the plaintiffs allege negligence on part of PACCAR in the form of negligently hiring Biggs.  Thus, the condition outlined in subsection (2) is not satisfied, leaving preemption as described in section(a) inapplicable.  Accordingly the Graves Amendment preempts neither the negligent hiring nor negligent

entrustment claims.

PACCAR's motion to dismiss does not speak to the nature of the claims brought by the plaintiffs.  Rather, PACCAR's arguments and evidence challenge only the existence of an employment relationship between PACCAR and Biggs.  *See* Motion to Dismiss ¶ 13 ("Plaintiffs' alleged negligence claims against PACCAR Leasing fail because PACCAR Leasing was not Defendant Biggs' employer.").  Although this may or may not be an important issue in ultimately resolving the case, the fact of an employment relationship is in no way determinative of whether the plaintiffs' claims are predicated on a theory of vicarious liability as required by section (a) of the Graves Amendment.  Accordingly, because the sole basis for PACCAR's motion to dismiss is inapplicable, the court declines to convert the motion to dismiss into a motion for summary judgment under Rule 12(d).[14]  *See* FED. PRAC. & PROC. CIV. § 1366 (3d ed.) ("As the language of [Rule 12(d)] suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."); *Richardson v. U.S. Bank National Association*, 2016 WL 5871327, No. 3:16-CV-2434-N (N.D. Tex. Oct. 6, 2016) at *2 (Horan, M.J.), report

---

[14]     To be clear, the court does not reach or decide whether an employment relationship exists between PACCAR and Biggs.

- 17 -

adopted, 2016 WL 5871328 (N.D. Tex. Oct. 7, 2016).

### 2.  *FMSCA*

In their response brief, the plaintiffs assert that PACCAR is a statutory employer of Biggs under the FMSCA.  It is unclear, however, if the plaintiffs argue that the FMSCA is an independent basis of liability for PACCAR or merely that an employment relationship exists by virtue of PACCAR's status as a statutory employer of Biggs under FMSCA.  To the extent that the plaintiffs argue that PACCAR is liable as a statutory employer under the FMSCA, such a claim is not properly before the court because it was not brought in the plaintiffs' complaint.  *Reyes v. Wells Fargo Bank,* 2016 WL 6915269, No. 3:15-CV-1348-L (N.D. Tex. Oct. 19, 2016) at *6 (Stickney, M.J.) (concluding that a plaintiff "is not entitled to add new claims to her complaint by way of her response"), report adopted, 2016 WL 6893722 (N.D. Tex. Nov. 23, 2016).

### III.  CONCLUSION

For the reasons set forth above, PACCAR's motion to dismiss is **DENIED**. The court declines to convert PACCAR's motion to dismiss into a motion for summary judgment.

- 18 -

**SO ORDERED**.

April 2, 2021.

A. JOE FISH
Senior United States District Judge